## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GREGORIO QUEZADA**                                                    **CIVIL ACTION**

**versus**                                                             **NO. 15-781**

**NATE CAIN, WARDEN,**                                                  **SECTION: "B" (1)**
**AVOYELLES CORRECTIONAL CENTER**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Gregorio Quezada, is a state prisoner incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana.  On July 1, 2008, he was convicted of carnal knowledge of a juvenile under Louisiana law.[1]  On October 10, 2008, he was sentenced to a term of nine years imprisonment.[2]  After previously denying petitioner post-conviction relief on several

---

[1]  State Rec., Vol. II of III, transcript of July 1, 2008, p. 57; State Rec., Vol. I of III, minute entry dated July 1, 2008.

[2]  State Rec., Vol. II of III, transcript of October 10, 2008; State Rec., Vol. I of III, minute entry dated October 10, 2008.

occasions,[3] the state district court then granted him an out-of-time appeal.[4] Thereafter, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence on May 21, 2014,[5] and the Louisiana Supreme Court denied his related writ application on January 23, 2015.[6]

On February 27, 2015, petitioner filed the instant federal application seeking *habeas corpus* relief.[7]  The state concedes that the application is timely.[8]

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[3] State Rec., Vol. I of III, docket master entry dated August 14, 2012; State Rec., Vol. I of III, Judgments dated April 29, 2013, and May 21, 2013.

[4] State Rec., Vol. I of III, minute entry dated June 7, 2013.

[5] State v. Quezada, 141 So.3d 906 (La. App. 4th Cir. 2014); State Rec., Vol. I of III.

[6] State v. Quezada, 159 So.3d 1057 (La. 2015); State Rec., Vol. I of III.

[7] Rec. Doc. 1.

[8] Rec. Doc. 11, p. 5.

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial, the juvenile victim, D.M., stated that she relocated to New Orleans with Mr. Quezada from New Jersey in June 2007, when

- 5 -

she was fifteen years old.  She stated that Mr. Quezada was a friend of her family.  Both D.M. and Mr. Quezada were born in Ecuador, and neither is a United States citizen.  In New Jersey, D.M. asked Mr. Quezada for help after an incident with her family,[FN2] and he agreed to help her find a job and a place to live.  In New Orleans, the victim lived with Mr. Quezada and another roommate in a trailer off Old Gentilly Road near Woodland Street.

> [FN2]  The victim stated that she was raped by her father.

D.M. stated that she engaged in vaginal intercourse with Mr. Quezada twice.  In one incident, Mr. Quezada bought D.M. alcohol, and when she was drunk, the two had sex in his truck.  In the other incident, D.M. and Mr. Quezada had sex again in his truck, but she was not drunk that time.  At some point, D.M. befriended a girl at a truck stop, and D.M. subsequently moved in with her.  D.M. testified that the move was precipitated by an incident where Mr. Quezada punched her when he was drunk.  D.M. told the girl what happened between them.  The girl thought it in D.M.'s best interest to talk to police about Mr. Quezada's actions and to return to her mother.

The girl took D.M. to the St. Bernard Parish Sheriff's Office, where D.M. communicated with Deputy Janeel Young about what happened.  Officer Kurt Coulon of the New Orleans Police Department's child abuse unit was called to the St. Bernard Parish Sheriff's Office.  Officer Coulon testified that the girl who took the victim to the sheriff's office was a friend of Deputy Young, but she was never identified and did not serve as a witness at any point in the proceedings.  At the sheriff's office, D.M. told Officer Coulon what happened[FN3] and where Mr. Quezada lived.  The victim led Officer Coulon to the location of Mr. Quezada's trailer, where he knocked on the door, identifying himself as police.  Mr. Quezada exited the trailer, and D.M. identified him.  Officer Coulon then advised Mr. Quezada he was being arrested and charged with carnal knowledge of a juvenile.  Both Officer Coulon and D.M. identified Mr. Quezada in open court.

> [FN3]  Officer Coulon testified that D.M. stated that she had sex with Mr. Quezada once in his truck and once in the trailer where they lived.  D.M., on the other hand, testified that she had sex with Mr. Quezada twice in his truck.

At trial, Mr. Quezada denied ever having sex with D.M.  He testified that D.M. ran away sometimes while living with her mother in New Jersey and drank alcohol often.  He also testified that D.M. was violent, did not get along with peers at school, and would also stay out all night partying.  He stated that his relationship with D.M. resembled a father-daughter relationship and that she sometimes introduced him as her uncle.[9]

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

Petitioner argues that there was insufficient evidence to support his conviction for carnal knowledge of a juvenile.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

> In his *pro se* supplemental brief, Mr. Quezada asserts that the trial court erred because the conviction was based on insufficient evidence.  An appellate court reviews insufficiency of evidence cases under the following standard:

>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991).  However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.  State v. Mussall, 523 So.2d 1305 (La. 1988).  The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider

---

[9] State v. Quezada, 141 So.3d 906, 910 (La. App. 4th Cir. 2014); State Rec., Vol. I of III.

the record as a whole since that is what a rational trier of fact would do.  If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted.  The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.  Mussall, 523 So.2d at 1309-1310.  "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).

A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence.  State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432.   The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.  State v. White, 28,095 (La.App. 2d Cir. 5/8/96), 674 So.2d 1018.

Conflicting statements as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244 (La.App. 4[th] Cir. 1989).  Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness.  Id.  A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence.  State v. Vessell, 450 So.2d 938 (La. 1984).

State v. Wells, 10-1338, pp. 4-5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306.

Mr. Quezada's basis for his insufficient evidence assertion constitutes the following:  that D.M. did not allege that any sexual encounters occurred in Newark, New Jersey, where she stayed with him for two weeks before moving to New Orleans; that D.M. did not allege that any sexual encounters occurred in her childhood or while Mr. Quezada lived with her family in New Jersey; and a generalized

assertion that the prosecution fabricated the allegations and testimony.

        Mr. Quezada appears to attack the credibility of D.M., due to the fact that the allegations of sexual intercourse between the two were said to have occurred only in New Orleans.[FN5]  This is clearly a credibility determination that falls under the trial court's sole authority.  Id.  Lacking proof that D.M.'s credibility is clearly contrary to the evidence, this court is prohibited from disturbing the trial court's credibility determination.  Id.  Taken as true, the fact that Mr. Quezada had ample opportunity to have sexual intercourse with the victim but, he asserts, did not, fails to constitute evidence that contradicts her credibility.  A myriad of reasons exist why D.M. did not allege sexual assault occurring during the time she was in New Jersey.  The fact that she did not allege it does not mean it did not occur.  Even if Mr. Quezada did not have sexual intercourse with D.M. in New Jersey, that fact bears no weight on the current crime of which Mr. Quezada was convicted.  The trial court placed greater value on D.M.'s credibility than on Mr. Quezada's.  Such is within the trial court's discretion.  Absent any evidence refuting this credibility determination, we are required to find this assignment of error lacks merit.

        [FN5] Mr. Quezada appears to have known and, thus, had access to the victim since she was about six years old.[10]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[11]

        Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1);

---

[10]  Quezada, 141 So.3d at 910-12; State Rec., Vol. I of III.

[11]  State v. Quezada, 159 So.3d 1057 (La. 2015); State Rec., Vol. I of III.

Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

As correctly noted by the Louisiana Fourth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

In the instant case, petitioner's guilt was established through the victim's testimony, and it is clear that a victim's testimony alone is generally sufficient evidence to support a conviction. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995). Although petitioner claims that the victim lied, the judge obviously found the victim's testimony credible. Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

<u>B.  Prosecutorial Misconduct</u>

Petitioner next claims that his conviction was obtained through prosecutorial misconduct.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

> Mr. Quezada alleges prosecutorial misconduct.  This court in <u>State v. LeBlanc</u>, 10-1484, p. 19 (La.App. 4 Cir. 9/30/11), 76 So.3d 572, 585, discussed the law governing that claim:
>
>> The defendant is arguing an issue under <u>Napue v. Illinois</u>, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), which held that where a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness.  However, the grant of a new trial based upon a <u>Napue</u> violation is proper only if:  (1) the statements at issue are shown to be actually false; (2) the State knew they were false; and (3) the statements were material.  <u>State v. Phillips</u>, 2010-0582, p. 5 (La.App. 4 Cir. 2/17/11), 61 So.3d 130, 136, citing <u>United States v. O'Keefe</u>, 128 F.3d 885, 893 (5 Cir. 1997).
>
> Mr. Quezada makes a generalized claim of prosecutorial misconduct, claiming that the prosecution fabricated the allegations and testimony.  Presumably, Mr. Quezada is claiming that the state's witnesses, Officer Coulon and D.M., presented false testimony, which led to his conviction.  However, without specific allegations of false statements, this court cannot evaluate Mr. Quezada's claim of prosecutorial misconduct.  We find no evidence that the prosecution knowingly allowed Officer Coulon and/or D.M. to lie on the witness stand about material facts.  Without such a showing, we find no merit to this assignment of error.[12]

---

[12]  <u>Quezada</u>, 141 So.3d at 916-17; State Rec., Vol. I of III.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

"A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact."  Bolton v. Cain, Civ. Action No. 13-4572, 2014 WL 432943, at *11 (E.D. La. Feb. 4, 2014); Harvey v. Cain, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  However, as the state court correctly held, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003).

Here, as the Louisiana Fourth Circuit Court of Appeal noted, petitioner has presented no evidence whatsoever showing that any witness gave false testimony, much less that the prosecution was aware of such false testimony.  On the contrary, his allegations are wholly conclusory and unsupported; as such, they fail to state a viable claim of prosecutorial misconduct.

---

[13]  State v. Quezada, 159 So.3d 1057 (La. 2015); State Rec., Vol. I of III.

See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation).  Accordingly, he has not shown that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Therefore, relief is not warranted.

C.  Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's ineffective assistance of counsel claims, holding:

> Mr. Quezada, in his *pro se* brief, lists several ways in which he alleges ineffective assistance of counsel:  had counsel performed a proper investigation, he would have realized that D.M. was lying and her story was "put together" by the police and prosecution; counsel did not call D.M.'s mother to verify her story that she was raped by her father; counsel did not investigate Deputy Young or his possible friend, the girl who took D.M. to the police station; "from the record it clearly appears this allege[d] truck stop was a prostitution ring;" and counsel failed to investigate D.M.'s school record.
>
> We find this assignment of error, given its fact-intensive nature, would ordinarily and more properly be addressed in the trial court with an evidentiary hearing.  However, the trial court has repeatedly denied Mr. Quezada's applications for post-conviction relief.  As such, we evaluate Mr. Quezada's claims to determine if his counsel's alleged ineffectiveness cost him a fair trial and whether the result of the trial would have been different but for the claims of ineffectiveness.  [State v.] Rubens, [83 So.3d 30 (La. App. 4th Cir. 2011)].
>
> Mr. Quezada asserts that counsel failed to investigate and discover that the police and prosecution "put together" the case and D.M.'s story.  As discussed in *pro se* assignment of error number two, *infra*, we find no evidence of prosecutorial misconduct, i.e. that the prosecution allowed witnesses to lie about material facts at trial.

- 14 -

Mr. Quezada then asserts that counsel should have called D.M.'s mother to verify her story in general, and verify whether D.M. was raped by her father. A phone call verification of D.M.'s "story" and rape would have been irrelevant to the trial, since counsel cannot testify as to facts. Even if counsel could have obtained D.M.'s mother as a witness, which seems unlikely, whether D.M. was raped by her father is irrelevant to the underlying case. The trial court permitted no elaboration after D.M. stated that her father had raped her in court, and sustained objections of irrelevance.

Next, Mr. Quezada asserts that counsel did not investigate Deputy Young or his possible friend, the girl who took D.M. to the police station. When asked who took D.M. to the station, Officer Coulon testified that it was a friend of Deputy Young, but the person was not identified. This person did not serve as a witness or participate in any part of these proceedings. Deputy Young is the person who called Officer Coulon to advise him about the case, presumably because the alleged crime occurred in Orleans Parish, over which the St. Bernard Sheriff's Office has no jurisdiction. The record does not reveal whether Deputy Young had any further involvement.

It is theoretically possible that counsel may have discovered information from these individuals, but what, if any, relevance this information might have is pure speculation.

Mr. Quezada also claims that D.M. worked as a prostitute at the truck stop where she met the girl with whom she moved in and who took D.M. to the sheriff's office. As stated previously, although defense counsel attempted to solicit this testimony from D.M. multiple times, the trial court sustained objections of relevance and did not allow the testimony.

Finally, Mr. Quezada claims that counsel failed to investigate D.M.'s school record. At trial, Mr. Quezada testified that D.M. had "problems in school," that she was violent with school peers and would hit them. D.M.'s school records may or may not corroborate these claims. However, past violent behavior at school is irrelevant to this case and bears no weight on D.M.'s credibility.

Accordingly, we find Mr. Quezada's *pro se* assignment of error for ineffective assistance of counsel has no merit.[14]

---

[14]  Quezada, 141 So.3d at 915-16; State Rec., Vol. I of III.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[15]

Because petitioner's ineffective assistance of counsel claims were rejected by the state courts on the merits, and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for

---

[15]  State v. Quezada, 159 So.3d 1057 (La. 2015); State Rec., Vol. I of III.

> a state court to decline to apply a specific legal rule that has not been
> squarely established by this Court."  Knowles v. Mirzayance, 556
> U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009)
> (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task.  An
> ineffective-assistance claim can function as a way to escape rules of
> waiver and forfeiture and raise issues not presented at trial, and so the
> Strickland standard must be applied with scrupulous care, lest
> intrusive post-trial inquiry threaten the integrity of the very adversary
> process the right to counsel is meant to serve.  Even under *de novo*
> review, the standard for judging counsel's representation is a most
> deferential one.  Unlike a later reviewing court, the attorney observed
> the relevant proceedings, knew of materials outside the record, and
> interacted with the client, with opposing counsel, and with the judge.
> It is all too tempting to second-guess counsel's assistance after
> conviction or adverse sentence.  The question is whether an attorney's
> representation amounted to incompetence under prevailing
> professional norms,  not whether it deviated from best practices or
> most common custom.
>
> Establishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult.  *The standards*
> *created by Strickland and § 2254(d) are both highly deferential, and*
> *when the two apply in tandem, review is doubly so.*  The Strickland
> standard is a general one, so the range of reasonable applications is
> substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness
> under § 2254(d).  *When § 2254(d) applies, the question is not*
> *whether counsel's actions were reasonable. The question is whether*
> *there is any reasonable argument that counsel satisfied Strickland's*
> *deferential standard.*

Id. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under

those stringently deferential standards, it simply cannot be said that relief is warranted with respect

to petitioner's ineffective assistance of counsel claims.

The United States Supreme Court established a two-prong test for evaluating such claims.  Specifically, a petitioner must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

The majority of petitioner's ineffective assistance claims allege that counsel performed an inadequate investigation. However, petitioner has not established either deficient performance or prejudice with respect to his "inadequate investigation" claims. For example, he has failed to offer any evidence whatsoever proving that counsel did not in fact (1) look into D.M.'s veracity, her school records, and her possible conspiracy with the police or prosecution, (2) investigate Deputy Young or the girl who took D.M. to the police station, or (3) explore the possibility D.M. was part of a prostitution ring operating out of a truck stop. Without such evidence, he has not shown that counsel performed deficiently. Further, even if petitioner had made that showing, he would also have to prove that prejudice resulted. To prove prejudice, a petitioner must point to evidence in the record demonstrating that further investigation would actually have revealed additional information beneficial to the defense. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, he has not shown that any such beneficial information would have been revealed; rather, his

assertions are entirely speculative and unsupported by even a scintilla of evidence.   A petitioner's

bare speculation is insufficient to prove that prejudice resulted from an allegedly inadequate

investigation.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La.

Dec. 9, 2009).

        The same defect exists with respect to petitioner's contention that his counsel should

have called D.M.'s mother to testify at trial.  As the United States Fifth Circuit Court of Appeals has

explained:

> Claims that counsel failed to call witnesses are not favored on federal
> habeas review because the presentation of witnesses is generally a
> matter of trial strategy and speculation about what witnesses would
> have said on the stand is too uncertain.  For this reason, *we require
> petitioners making claims of ineffective assistance based on counsel's
> failure to call a witness to demonstrate prejudice by naming the
> witness, demonstrating that the witness was available to testify and
> would have done so, setting out the content of the witness's proposed
> testimony, and showing that the testimony would have been favorable
> to a particular defense.*  This requirement applies to both uncalled lay
> and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would have

been favorable to a particular defense.").  Here, petitioner presented no evidence, such as an affidavit

from D.M.'s mother, demonstrating that she would have testified in a manner beneficial to the

defense.  Therefore, again, petitioner, has obviously failed met his burden with respect to this claim.

See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

<u>D.  Sentencing Errors</u>

Petitioner also claims that the trial court erred in imposing a "near-maximum"

sentence without giving adequate reasons. On direct appeal, the Louisiana Fourth Circuit Court of

Appeal denied that claim, holding:

> Counsel for the defendant asserts that the trial court erred by failing to give reasons for imposing a nearly maximum sentence where the record makes clear that Mr. Quezada, a first offender, is not the worst kind of offender, and the offensive behavior is not the most serious violation of the charged offense.  Thus, this assignment is essentially an appeal of an excessive sentence.  Excessive sentence cases are governed by an abuse of discretion standard:

>> Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to ... excessive ... punishment."  Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.  <u>State v. Sepulvado</u>, 367 So.2d 762, 767 (La. 1979).   A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.  <u>State v. Bonanno</u>, 384 So.2d 355, 357 (La. 1980).   A trial judge has broad discretion when imposing [a] sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. <u>State v. Cann</u>, 471 So.2d 701, 703 (La. 1985).   On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.  <u>State v. Walker</u>, 2000-3200, p. 2 (La. 10/12/01), 799 So.2d 461, 462; <u>cf.</u> <u>State v. Phillips</u>, 2002-0737, p. 1 (La. 11/15/02), 831 So.2d 905, 906.

> <u>State v. Dauzart</u>, 11-0688, pp. 12-13 (La.App. 4 Cir. 3/21/12), 89 So.3d 1214, 1222.

Defense counsel argues that the trial court failed to comply with La.C.Cr.P. art. 894.1, failing to state for the record its reasons for sentencing and the factual basis for those considerations. Because of that omission, defense counsel argues defendant's case should be remanded and Mr. Quezada should be resentenced. We disagree.

La.C.Cr.P. 894.1 C states: "[t]he court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.C.Cr.P. art. 881.4 governs circumstances when remand and resentence are appropriate:

> A. If the appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentence by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose.
> B. In the interest of justice, the appellate court may remand the case for resentencing before a judge other than the judge who imposed the initial sentence.
> C. If necessary to an appropriate disposition of a motion to reconsider sentence, the appellate court may remand the case to the trial court with instructions to supplement the record or to hold an evidentiary hearing.
> D. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.

Courts have held that if the record supports a conviction and sentence, a trial court's failure to strictly comply with La.C.Cr.P. art. 894.1 C does not merit remand and resentence. In Dauzart, p. 13, 89 So.3d at 1222-23, we stated:

> The trial judge's failure to comply with La. Code Crim. Proc. article 894.1 does not automatically render a sentence invalid. The Louisiana Supreme Court has held that although Article 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself. State v. Wimberly, 414 So.2d 666 (La. 1982). Article 894.1 is intended to provide an impartial set of guidelines within which the trial judge's sentencing discretion may be

- 23 -

exercised.  State v. Price, 403 So.2d 660 (La. 1981); State v. Douglas, 389 So.2d 1263 (La. 1980).

Compliance with Article 894.1 further provides a record which is detailed enough to allow for a reasoned review of allegedly excessive sentences.  The articulation of the factual basis for a sentence is the goal of Article 894. 1, not rigid or mechanical compliance with its provisions.  A remand is unnecessary where the record clearly shows an adequate factual basis for the sentence imposed, even where there has not been full compliance with Article 894.1.  State v. Boatright, 406 So.2d 163 (La. 1981).

In Dauzart, this court reasoned that although the trial court failed to state its reasons for sentencing, the judge sat through the trial and heard the testimony, and the record supported the conviction and sentence.  Id.  Dauzart is applicable to this case.  Here, the trial judge presided over Mr. Quezada's trial, heard the testimony of Officer Coulon, D.M., and Mr. Quezada, and ordered and received a PSI. La. R.S. 14:80 A(1) states that it is felony carnal knowledge of a juvenile when:

A person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is thirteen years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender and when the difference between the age of the victim and the age of the offender is four years or greater.

D.M. was born on 16 January 1992, traveled to New Orleans with Mr. Quezada in June 2007, and had sex with Mr. Quezada within the next few months.  D.M. was fifteen years old at the time.  Mr. Quezada's date of birth is 25 December 1967, making him 39 years old at that time.  If taken as true, these facts in the record on their own support Mr. Quezada's conviction and sentence.  The sentencing range for La. R.S. 14:80 is not more than ten years.  Mr. Quezada was sentenced to nine years in the Department of Corrections, or 90% of the sentencing range.  Defense counsel argues that Mr. Quezada is a first-time offender and does not drink or use drugs.  Defense counsel asserts that the nine year sentence is overly harsh, given that Mr.

- 24 -

Quezada was not a worst kind offender nor was his violation the most serious form of the offense.

It is within the trial judge's discretion to sentence a defendant to a prison term within the statutory range. Additionally, D.M. states in the PSI: "I do think it is better for him to be in jail because if not my family may be in danger." Moreover, courts have upheld sentences high in the sentencing range for first time offenders of sex crimes against a juvenile. See State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234 (first time offender sentenced to the maximum of ten years for sexual battery and seven years for indecent behavior with a juvenile); State v. Meshell, 39,171 (La.App. 2 Cir. 10/27/04), 886 So.2d 1195, 1197 (defendant, who received a first offender pardon in 1987 for an unspecified crime, was sentenced to eight years at hard labor on three counts of carnal knowledge of a juvenile and seven years for one count of indecent behavior with a juvenile to run concurrently).

The record supports Mr. Quezada's sentence; we do not find the trial court abused its discretion.

We note that appellate counsel points out that Mr. Quezada's trial counsel failed to move for a reconsideration of sentence. Pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and State v. Robinson, 98-1606 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, defense counsel argues, a finding of ineffective counsel by failure to object to the sentence as excessive or to move for reconsideration, where the trial court does not state its reasons for sentencing, may be grounds for remand. In Robinson we found that the record did not support the defendant's sentence.[FN6] Id. Defense counsel on appeal did not assert an assignment of error for ineffective counsel. Mr. Quezada, in his *pro se* brief, asserted an ineffective assistance of counsel assignment of error, discussed further *infra*, but did not specify that his trial counsel should have objected to his sentence as excessive or moved for reconsideration. However, for the sake of thoroughness, we will discuss whether trial counsel's failure to object to the sentence as excessive or to move for reconsideration of sentence constitutes ineffective assistance of counsel.

[FN6] The court in Robinson, 98-1606, p. 9, 744 So.2d at 128, states:

[N]o presentence investigation report is contained in the record. The

- 25 -

defendant was nineteen years old at the time the crime was committed and was sentenced two days before his twentieth birthday. The defendant asserts in his brief that he was a first offender. Because the defendant testified in his own behalf, and the State offered no evidence that he had been previously convicted of a felony, it is a reasonable assumption that he has not previously been convicted of a felony. The record contains no evidence about any other arrest or conviction record, which it might be assumed would have been furnished to the court by the State for sentencing purposes if such record existed. Other than the previously discussed facts, and the fact that the defendant rides a bicycle, has a mother and a sister, and probably has gold teeth, nothing else is known about him.

Because the trial court failed to articulate any reasons at all for sentencing the defendant to one-third of the maximum possible sentence, and the record does not furnish a sufficient factual basis for the sentence, we find that counsel's performance was deficient in failing to set forth excessiveness of sentence as a ground in the motion to reconsider sentence, and that such deficiency prejudiced the defendant.

"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on

appeal.  State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147.  Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  State v. Brooks, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 (on rehearing);  State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126.  In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency.  Brooks, *supra*; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741.  Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669.  Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial.  To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.

This court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel."  Bordes, 98-0086, p. 8, 738 So.2d at 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir. 1986).  Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions.  Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id. quoting State v. Brooks, 505 So.2d 714, 724 (La. 1987).

> State v. Rubens, 10-1114, pp. 58–59 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, 66-67.
>
> Here, trial counsel made no objections at the sentencing hearing and did not file a motion to reconsider sentence. However, Mr. Quezada filed multiple applications for post-conviction relief, including motions to reconsider sentence; the trial court repeatedly denied those motions. Because the trial court denied Mr. Quezada's motions to reconsider his sentence, trial counsel's failure to file those motions himself would not have made a difference to Mr. Quezada's access to a fair trial and would not have altered the outcome of the trial court's sentencing determination. Unlike Robinson, a PSI was requested and received by the trial judge before sentencing Mr. Quezada. Further, the record supports Mr. Quezada's conviction and sentence. As such, we find no merit to defense counsel's Robinson claim.[16]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[17]

To the extent that petitioner is now reasserting his claim that the state district court failed to comply with article 894.1, that claim simply is not cognizable in a federal *habeas corpus* proceeding. See, e.g., Butler v. Cain, 327 Fed. App'x 455, 457 (5th Cir. 2009) ("[Petitioner] also argues that the trial court erred in imposing the statutory maximum sentence of life imprisonment without providing sufficient reasons as required by La. Code Crim. Proc. art. 894.1(C). His claim that the trial court violated state law is not cognizable in this federal habeas proceeding."); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("Haynes also challenges the state court's failure to comply with La. Code Crim. Proc. Ann. art. 894.1, which requires courts to state for the record the

---

[16] Quezada, 141 So.3d at 912-15; State Rec., Vol. I of III.

[17] State v. Quezada, 159 So.3d 1057 (La. 2015); State Rec., Vol. I of III.

reasons and factual bases for imposing a sentence, but a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.").

Similarly, any other claim that petitioner's sentence is excessive or otherwise inappropriate under Louisiana law likewise is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, a federal *habeas* court will not review the legality of a petitioner's sentence under state law. See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

On the other hand, to the extent that petitioner is claiming that his sentence is excessive under *federal* law, that claim obviously is cognizable; however, it is also meritless. Even considering petitioner's argument that his sentence is harsh because it falls at the high end of the sentencing range and because he is a first offender, the mere fact that a sentence is harsh does not mean that it is unconstitutionally excessive. For the following reasons, petitioner's sentence does not cross that impermissible line.

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary

proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

<u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

Here, petitioner's sentence fell within the range provided by law. Moreover, his crime, a sexual offense involving a minor, was particularly serious. <u>See, e.g.</u>, <u>United States v. Lamere</u>, 337 Fed. App'x 669, 672 (9th Cir. 2009) ("This court has generally recognized the grave harm resulting from sexual crimes relating to children."). In light of those considerations, as well as the finding in <u>Rummel</u> that a *life* sentence was not excessive for the relatively minor offenses involved in that case, this Court cannot conclude that petitioner's nine-year sentence for the grave offense of carnal knowledge of a juvenile is grossly disproportionate under federal law. Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." <u>Gonzales</u>, 121 F.3d at 942.

Lastly, out of an abundance of caution, the Court notes that is unclear whether petitioner is arguing that his trial counsel was ineffective for failing to object to the sentence or to file a motion for reconsideration. However, even if he is, the Louisiana Fourth Circuit Court of Appeal was obviously correct in holding that any such ineffective assistance claim has no merit. Petitioner's crime was a grave one involving the sexual abuse of a juvenile, his sentence fell within the statutory range, there is no reason whatsoever to believe that the judge, who presided over the trial and was well aware of the facts of the case, would have imposed a lesser sentence if only an

objection had been lodged or a motion to reconsider had been filed, and petitioner was afforded full appellate review of his sentence despite counsel's failure to file a motion to reconsider sentence.  In light of these considerations, petitioner cannot show a reasonable probability that, but for counsel's failure to object to the sentence or to file a motion for reconsideration, a different sentence would have resulted.  Accordingly, he cannot show the prejudice necessary to support an ineffective assistance claim.  See, e.g., Pierre v. Rader, Civ. Action No. 11-55, 2012 WL 3026790, at *10 (E.D. La. June 18, 2012), adopted, 2012 WL 3027934 (E.D. La. July 24, 2012); Doucet v. Terrell, Civ. Action No. 6:11-cv-0124, 2011 WL 4712103, at *5 (W.D. La. Apr. 20, 2011), adopted, 2011 WL 4712057 (W.D. La. Oct. 5, 2011).

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by **Gregorio Quezada** be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

---

[18] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this eighteenth day of May, 2015.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**